IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID ANDREWS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 13-1657 |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| OFFICER ROBERT SCUILLI, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

### I. MEMORANDUM

Presently before the Court is Defendant's Motion for Summary Judgment (Doc. 36). Defendant seeks summary judgment as to all of the claims against him contained in Plaintiff's complaint: (a) false arrest; (b) malicious prosecution; and (c) fabrication of evidence, all pursuant to 42 U.S.C. § 1983. For the reasons stated herein, Defendant's motion will be GRANTED with respect to all claims.

#### A. PROCEDURAL BACKGROUND

According to the allegations in the Amended Complaint (Doc. 29), David Andrews ("Plaintiff") was arrested and charged with a number of first degree misdemeanors, including but not limited to, stalking, luring a child into a motor vehicle, and corruption of minors. Id. at ¶ 16. He was incarcerated in the Allegheny County Jail for three days before he was released on $5,000 bond. Id. Following Plaintiff's Preliminary Hearing, Magisterial District Judge Mary Ann Cercone dropped the stalking charge but held the remaining charges for court. Id. at ¶ 27. At a bench trial on June 17, 2013, Plaintiff was acquitted of all remaining charges by Allegheny County Common Pleas Judge Philip A. Ignelzi. Id. at ¶ 31.

Plaintiff brings this lawsuit pursuant to 42 U.S.C. § 1983 for violations of his Fourth and Fourteenth Amendment rights. Plaintiff claims that his arrest and detention were the result of fabrication of evidence, false arrest and subsequent malicious prosecution by Officer Robert Scuilli ("Defendant"). Id. at ¶ 52. The crux of Plaintiff's claim is that his arrest was made without probable cause. Plaintiff asserts that, through omissions and false or misleading assertions, Defendant misrepresented the facts in his affidavit of probable cause submitted in support of Plaintiff's arrest warrant; facts that, if recited accurately, would have reflected a lack of probable cause. See generally Am. Compl.

**B. FACTUAL BACKGROUND**

Unless otherwise noted, the facts that follow are undisputed or construed in the light most favorable to Plaintiff.

On November 25, 2012, Brooke Wagner, a fifteen-year-old girl, was walking home from a friend's house when a man in a vehicle approached her and repeatedly asked her if she would like a ride. Def.'s Conc. Stmt. Mat. Facts (Doc. 38) at ¶ 1. Ms. Wagner declined, asked him to leave her alone, and threatened to report him. Id. at ¶ 2. After he drove away, Ms. Wagner called her mother, Rhonda Thornton, to tell her what had happened and provide her with a brief description of the driver and the vehicle. Def.'s Conc. Stmt. at ¶ 3. Ms. Thornton then notified the police. Id. at ¶ 4.

Shortly thereafter, two Stowe Township police officers, Defendant and Officer Ruiz, arrived at Ms. Wagner's home. Id. at ¶ 6. Officer Ruiz questioned Ms. Wagner. Id. at ¶¶ 7-8. Consistent with what she had relayed to her mother earlier, Ms. Wagner told the officers that the man who approached her appeared to be about 35 years old with black/dark hair, and he was

2

driving a 4-door red sedan with a Pennsylvania license plate beginning with the letters "ACG." Id. at ¶¶ 9-11.

While riding in a car with her mother the next day, November 26, 2012, Ms. Wagner thought she saw the vehicle involved in the previous day's incident. Def.'s Conc. Stmt. at ¶ 15-17. The two women followed the car to a parking lot, calling the police along the way. Id. at ¶ 19; Pl.'s Resp. (Doc. 46) at ¶ 20. Once the driver exited the vehicle and Ms. Wagner was able to see him, she thought he looked somewhat similar to the man from the day before. Id. at ¶ 20; Pl.'s Reply to Def.'s Conc. Stmt. (Doc. 45) at ¶ 20. Ms. Wagner and Ms. Thornton then went to the Stowe Township Police Station where they provided Defendant and Officer Gruber with the full license plate number of the vehicle they had seen that day, Pennsylvania plate "JDG 4817." Def.'s Conc. Stmt. at ¶ 25. Ms. Wagner informed both officers that she believed it to be the same vehicle and the same man from the day before but that the car had a different license plate. Id. at ¶ 25. The officers ran the license plate number and subsequently created a photo array for Ms. Wagner to examine, including in the array the driver's license photo for the owner of the vehicle observed earlier that day. Id. at ¶ 28; Pl.'s Reply to Def.'s Conc. Stmt. at ¶ 28.

Defendant presented the photo array to Ms. Wagner, asking her if she recognized any of the gentlemen in the photographs. Def.'s Conc. Stmt. at ¶ 28; Def.'s Conc. Stmt. Ex. H (Doc 39-8) at 6. Ms. Wagner picked out the photograph of Plaintiff by circling it and writing her initials next to it. Def.'s Conc. Stmt. at ¶ 32. Defendant subsequently drafted an affidavit of probable cause in support of an arrest warrant for Plaintiff. Id. at 40. Plaintiff was arrested a few days later. Id. at 41. The affidavit read as follows:

> Officers were notified on 11/25/12 at approximately 1112 hours, of a possible child luring incident. I, officer Scuilli, and officer Ruiz were dispatched to 1309 Island Avenue

3

to meet the victim. At this time, officers spoke with the victim. The female juvenile's information was obtained and is on record and said juvenile and parent will be present at all court hearings.

The victim (female juvenile age 15) stated that while walking home from a friend's house, a red vehicle pulled up next to her while walking on the sidewalk and asked her (juvenile age 15) if she wanted a ride. The victim stated "NO". The defendant then said "COME ON, JUST GET IN". The victim then said "NO, I'M FINE. Now I am going to report you". The victim then stated that the vehicle sped away.

The victim then described this male as a middle aged white male with dark hair with streaks of gray. Victim described the vehicle as a red 4 door sedan.

On 11/26/12, the victim spotted this same vehicle described above, driving on Island Avenue, while riding with her mother. She identified the plate as JDG4817, PA tag. They followed the vehicle to Axion, and victim again positively identified the male driver as the suspect she encountered the previous day.

The victim and her mother came to the station to give officers this information. Officers ran the PA plate, JDG4817, and found it to be registered to David Gene Andrews, out of Beaver Falls, PA. Based on this information, officers created a line up using similar identifiers as Andrews.

The victim was shown a line up, created by myself and officer Gruber, generated by descriptors through N-NET. The victim was asked to look at the pictures and to see if there was anyone of the pictures that she recognized as the driver of the car. She was advised that he might or might not be in the pictures. The victim looked at the pictures and almost immediately picked out the picture of defendant. The defendant was identified through JNET Pa. drivers license as David Gene Andrews, DOB [REDACTED]

Your affiant respectfully requests that a warrant be issued for
David Gene Andrews based on the facts enumerated above.

Def.'s Conc. Stmt. Ex. H at 6.

### C. ANALYSIS

#### a. Qualified Immunity

As an initial matter, Defendant argues that summary judgment is appropriate because he is immune from liability under the doctrine of qualified immunity. Def.'s Br. at 12. The doctrine of qualified immunity protects government officials from liability for civil damages

4

insofar as their conduct does not violate clearly established statutory or constitutional rights. Pearson v. Callahan, 555 U.S. 223, 231-32 (2009).

When qualified immunity is applied in the execution of an arrest warrant, government agents are generally entitled to rely on a judicially secured warrant for immunity from liability for arrests subsequently found unconstitutional. Malley v. Briggs, 475 U.S. 335, 340 (1986). Only "where the warrant application is so lacking in indicia of probable cause as to render official belief in [the] existence [of probable cause] unreasonable, will the shield of immunity be lost." Id. at 344-45. Accordingly, the Court must first evaluate Plaintiff's false arrest and malicious prosecution claims and determine whether probable cause existed.

### b. Plaintiff's Fourth Amendment Claims

The Fourth Amendment prohibits a police officer from arresting a citizen except upon probable cause. Orsatti v. N.J. State Police, 71 F.3d 480, 482 (3d. Cir. 1995) (citing Papachristou v. City of Jacksonville, 405 U.S. 156, 169 (1972)). A court examining a section 1983 claim for false arrest examines "not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to *believe* the person arrested had committed the offense." Dowling v. Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988) (emphasis added).

To prevail on a claim of malicious prosecution under §1983, a plaintiff must establish that: (1) defendant initiated a criminal proceeding; 2) the proceeding was initiated *without probable cause*; 3) the criminal proceeding ended in plaintiff's favor; 4) defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and 5) plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal

5

proceeding. See Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009) (emphasis added). Thus, the absence of probable cause is an essential element in both a malicious prosecution and a false arrest claim, and such claims cannot proceed if probable cause existed—regardless of whether the arrest at issue was a wise or typical use of police resources. See Dowling, 855 F.2d at 141.

   **i. Probable Cause Analysis**

A plaintiff may succeed in a Section 1983 action for false arrest or malicious prosecution made pursuant to a valid warrant if the plaintiff can establish: (1) that the officer knowingly or deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause. Wilson v. Russo, 212 F.3d 781, 786-87 (3d Cir. 2000) (internal citations and quotations omitted).[1]

In determining whether a plaintiff can establish these elements, a district court must examine an officer's omissions and assertions separately, as each requires a different standard of review in order to determine whether they were made knowingly or deliberately, or with a reckless disregard for the truth. Id. at 787. Omissions are made with reckless disregard "if an officer withholds a fact in his ken that any reasonable person would have known that this was the kind of thing the judge would want to know." Id. at 787-88 (internal citations and quotations omitted). Assertions, on the other hand, "can be made with reckless disregard for the truth even if they involve minor details – recklessness is measured not by the relevance of the information, but the demonstration of willingness to affirmatively distort truth." Id. Reckless disregard is

---

[1] The Court of Appeals for the Third Circuit has applied this analysis in examining the existence of probable cause in the context of false arrest and malicious prosecution charges. Compare Wilson, 212 F.3d at 785-86, with Bircher v. Pierce, 610 Fed.Appx. 194, 197 (3d. Cir. 2015).

found as to an assertion when, "the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." Id. at 788 (internal citations and quotations omitted). Only once a court establishes that there were omissions and/or false or misleading assertions does it turn to the question of materiality. Id. at 789.

   1. *Omissions*

The Court first examines whether Defendant made any omissions.[2] Plaintiff first argues that Defendant omitted from the affidavit that Ms. Wagner reported a partial license plate number on November 25th that was inconsistent with the license plate number she observed and reported on November 26th. Pl.'s Opp'n Br. at 6. The Court agrees with Plaintiff that this is exactly the type of information that an affiant had "in his ken" about which a judge would reasonably want to know.

Plaintiff also argues that the Defendant should have included in the affidavit that the vehicle that approached Ms. Wagner on November 25th was a four-door vehicle while Plaintiff drove a three-door hatchback. Pl.'s Opp'n Br. at 5-6. Here the Court disagrees. The Court can find nothing in the record to suggest that at the time Defendant drafted the affidavit of probable cause, he knew or had reason to know that the Plaintiff drove a three-door hatchback. Therefore, it cannot be classified as an omission.

---

[2] Plaintiff failed to separate his arguments regarding the deficiency of the affidavit of probable cause as to what was a false or misleading assertion versus what was an omission, focusing instead on "misrepresentations" and grouping all arguments together in a section titled "Scuilli's sworn affidavit contained material omissions and false statements." Pl.'s Opp'n Br. at 5. Because, as noted above, omissions and false or misleading assertions are governed by different standards when determining recklessness, the Court will attempt to separate Plaintiff's arguments into appropriate categories and examine each category individually.

Plaintiff additionally alleges that Defendant reaffirmed Ms. Wagner's selection of Plaintiff, following the photo array, and that doing so calls into question any of Ms. Wagner's identifications. Pl.'s Opp. Br. at 16. Defendant's behavior, while questionable, does not change whether probable cause existed at the time Defendant drafted the affidavit. It could potentially taint Ms. Wagner's subsequent identification of Plaintiff at the preliminary hearing and at the criminal trial, yet neither of those identifications is relevant to this Court's analysis.[3]

### 2. *False or Misleading Assertions*

The Court now turns to whether Defendant made any false or misleading assertions with reckless disregard for the truth. Plaintiff points to several instances of allegedly false or misleading assertions: (1) Defendant improperly relied on Ms. Wagner's story because she is not a credible witness; (2) Defendant made statements indicating that Ms. Wagner's initial physical description of the suspect was closer to that of Plaintiff's physical description than the record supports; (3) Defendant created the impression that the November 26th sighting of Plaintiff's vehicle occurred closer to the site of the original incident than the record supports; (4) Defendant stated that the victim spotted "the same vehicle" the next day when the two vehicles had different license plates; and (5) Defendant stated that the victim "positively identified [Plaintiff] again" on November 26th when it was only her first identification of Plaintiff. See generally Pl.'s Opp'n Br. at 5-10. Additionally, Plaintiff challenges the manner in which Ms. Wagner was shown the

---

[3] Plaintiff makes additional allegations regarding what Defendant knew or should have known and did or should have done following Plaintiff's arrest, including but not limited to, the timing of when the Allegheny County District Attorney's Office learned of Ms. Wagner's inconsistent statements. Specifically, Ms. Wagner incorrectly testified at the pre-trial hearing as to the license plate she viewed on the day of the incident and, Defendant, who was present at the hearing, failed to inform the Assistant District Attorney of that fact. This argument is not relevant to the determination of probable cause, as it occurred subsequent to the issuance of the arrest warrant.

8

photo array, alleging the form of the question posed to her by Defendant increased the likelihood she would select Plaintiff from the photo array, and as such, Defendant's reliance on that identification in the affidavit was improper. Id. at 8-9. The Court will take each argument in turn.

Plaintiff contends that Defendant knew or had reason to know that his affidavit was untrue because all of the information Defendant relied on in his affidavit of probable cause came from Ms. Wagner and, Plaintiff argues, Ms. Wagner is not credible. Pl.'s Opp'n Br. at 5. The Court disagrees. Defendant was justified in including a victim's adamant statements regarding the events that had transpired. Because subsequent facts called into question the victim's credibility does not render Defendant's initial reliance improper.

Plaintiff also argues that Defendant made misrepresentations designed to eliminate discrepancies between Ms. Wagner's description of the suspect and Plaintiff's physical appearance. Pl.'s Opp'n Br. at 7. He argues Defendant falsely averred that Ms. Wagner described the suspect as middle-aged and having streaks of grey in his hair. Id. Here, the Court agrees. The record, read in a light most favorable to Plaintiff, shows that on the day of the incident, Ms. Wagner described the suspect as being "about 35" with dark hair. The police report from November 25th does not reflect any mention of the suspect having streaks of grey in his hair. See generally, Def.'s Conc. Stmt. Ex. C (Doc. 39-3). Given that Defendant drafted the affidavit after seeing a photograph of Plaintiff with streaks of grey in his hair, this assertion could be interpreted as more than mere carelessness or negligence in drafting the affidavit, and instead as an active attempt by Defendant to inflate the strength of the evidence tying Plaintiff to the crime.

Next, Plaintiff attempts to argue that Defendant created a false impression as to the likelihood Plaintiff was the suspect by stating the November 26th sighting occurred on Island Avenue instead of on Neville Road, as the crime occurred on Island Avenue. Pl.'s Opp'n Br. at 7. The Court disagrees. Neville Road becomes Island Avenue. Def.'s Conc. Stmt. Ex. B (Doc. 39-2) at 21. Thus, the Court finds Defendant's assertion with respect to Island Avenue neither false nor misleading. Even if this Court were to find this a misrepresentation, there is no way it could be considered material given the geography involved.

Plaintiff's next two arguments are interrelated and the Court reviews them together. To summarize, Plaintiff argues that by stating "the victim spotted this same vehicle [and she] again positively identified the male driver as the suspect she encountered the previous day," Defendant overstates Ms. Wagner's level of confidence regarding her identification of Plaintiff as the suspect. Id. at 7-8. The Court agrees. This assertion becomes more misleading in context. Read in the light most favorable to Plaintiff, the record suggests that Ms. Wagner believed that the man from November 26th was the suspect from November 25th precisely because she thought Plaintiff's vehicle was the same vehicle from the crime. Coupled with Defendant's overall misrepresentation of the facts, including leaving out the license plate discrepancy and Defendant's misrepresentations regarding Ms. Wagner's November 25th physical description of the suspect, the strong language Defendant uses here, specifically "this same vehicle" and "positively identified again," can only be read as assertions, assertions about which Defendant had "obvious reasons" to doubt their accuracy.

Finally, we turn to the question of the propriety of the photo array administration. Plaintiff alleges the form of the question, "if she recognized any of the gentlemen in the lineup,"

would be likely to lead Ms. Wagner to identify the man from the parking lot on November 26th, not the man from the attempted luring on November 25th, as she had seen him just a short time before. Pl.'s Opp'n Br. at 8-9. Defendant's position is that Ms. Wagner identified from the photo array "the perpetrator who tried to lure her into his car" and that she "understood that she was looking at the photo array to identify the male who tried to lure her into his car." Def.'s Conc. Stmt. at ¶¶ 33-34. The purpose this Court reconstructing the affidavit is to determine whether Defendant made any misleading or false assertions, not to second guess the conclusions the issuing judge made with respect to facts actually before her. Plaintiff's attempt to invalidate the identification because of improper presentation of the photo array fails for one simple reason: Defendant included in his affidavit the exact wording with which Plaintiff takes issue.

   3. *Materiality*

Having found that Defendant knowingly or deliberately, or with a reckless disregard for the truth, made false statements and omissions that create a falsehood in applying for Plaintiff's arrest warrant, the Court now turns to the materiality of those omissions and assertions. As the Court of Appeals for the Third Circuit instructs, this Court examines whether the corrected affidavit, after inserting the omissions and correcting or eliminating the false and/or misleading assertions, would still establish probable cause. Wilson, 212 F.3d at 789. Defendant argues that as a matter of law, the positive identification by the victim, without more, is sufficient to establish probable cause. While the Court agrees that under most circumstances that type of identification would be sufficient, it is not an absolute. Id. at 790. Independent exculpatory evidence or substantial evidence of the witness's own unreliability that is known by the arresting

officer could outweigh the identification such that probable cause would not exist. Id. Each case must therefore be examined on its facts. Id.

In Wilson, after conducting the omissions/assertions analysis, the Third Circuit found three exculpatory facts that the officer should have included in his affidavit: (1) one eyewitness recalled the suspect as being someone 6'3"-6'5" but the target of the affidavit ("Wilson") was four to seven inches shorter; (2) one of the two victim-witnesses, with ample opportunity to view the robber, failed to identify Wilson when shown a photo array; and (3) a separate witnesses saw Wilson in a shopping center when he was supposedly committing the robbery. Id. at 791. Yet, the Wilson Court found the exculpatory facts when balanced against the inculpatory facts – the positive identification of Wilson by a witness and the fact that Wilson was seen in the vicinity of the crime near the time of the theft – did not undermine the existence of probable cause. Id. at 792.

Here, the Court isolated several facts that were recklessly omitted and/or misleadingly asserted. First, Defendant recklessly omitted the license plate discrepancy between the victim's first report and her second report. Second, Defendant falsely, or with reckless disregard for the truth, asserted that Ms. Wagner described the suspect as being middle-aged with streaks of grey in his hair in contrast to Ms. Wagner's actual statement that he was about 35 with dark hair. Last, Defendant falsely, or with reckless disregard for the truth, asserted that that "the victim spotted this same vehicle [and she] again positively identified the male driver as the suspect she encountered the previous day," overemphasizing the certainty and timing of Ms. Wagner's identification of Plaintiff as the suspect.

Here, as in Wilson, a victim positively identified the target of the affidavit but the officer failed to include in the affidavit additional exculpatory facts. In both instances, the affidavit omitted or glossed over inconsistencies in the victim's statement with regards to the target's physical appearance. In Wilson, the omission was in regards to a significant height disparity whereas here Defendant suggested that the victim identified Plaintiff as being middle aged and having streaks of grey in his hair, when the record supports neither. Further, the affidavit in Wilson omitted additional exculpatory facts (1) that another victim/witness failed to identify the target from a lineup and (2) that a different witness spotted the target in a separate location when the crime allegedly occurred. Here, Defendant (1) omitted additional exculpatory evidence that the partial license plate from the date of the incident did not match the license plate from the day following the incident and (2) overstated the victim's consistency regarding her identification of Plaintiff.

The Court fails to see substantial distinctions from the facts at issue in this case and those examined by the Third Circuit in Wilson such that a different result would be appropriate. Accordingly, the Court finds that no reasonable jury could find facts that would lead to the conclusion that the reconstructed affidavit lacked probable cause. Therefore, Defendant's Motion for Summary Judgment is GRANTED as to Plaintiff's Fourth Amendment claims.

**Plaintiff's Fourteenth Amendment Claims**

Plaintiff alleges that as a direct result of Defendant's conduct, he has suffered a violation of his rights under the Fourteenth Amendment to be free from criminal prosecution based upon false and/or fabricated evidence. Am. Compl. at ¶ 35. A defendant *convicted* at trial where the prosecution has used fabricated evidence has a claim under section 1983 based on the Fourteenth

Amendment, if there is a reasonable likelihood that, without the use of that evidence, the defendant would not have been *convicted*. Halsey v. Pfeiffer, 750 F.3d 273, 294 (3d Cir. 2014) (emphasis added). The Court agrees with Defendant that this particular cause of action requires the criminal defendant to have been convicted at trial – the Third Circuit uses the term twice in its holding. Additionally, the Third Circuit explicitly cautioned against extending the holding beyond its intended scope. Id. at 297. Thus, this Court declines to extend the Third Circuit's holding in Halsey to a situation where a criminal defendant was acquitted on all charges, as Plaintiff was here. Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's Fourteenth Amendment fabrication of evidence claim is GRANTED.

## II. ORDER

For the reasons stated above, the Court hereby ORDERS that Defendant's Motion for Summary Judgment (**Doc. 36**) is **GRANTED**.

IT IS SO ORDERED.

s/ Cathy Bissoon
Cathy Bissoon
United States District Judge

September 30, 2015

cc (via e-mail):

All counsel of record.